[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 14-10232
Non-Argument Calendar

_____

Docket No. 1:12-cv-03503-WSD

ROBERT KOPPERUD,

                                                  Plaintiff - Appellee,

versus

DEXTER MABRY,
in his individual capacity,

                                                  Defendant - Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(July 28, 2014)

Before WILSON, ANDERSON, and EDMONDSON, Circuit Judges.

PER CURIAM:

Deputy Dexter Mabry appeals the district court's denial of his motion for summary judgment in Plaintiff Robert Kopperud's civil action under 42 U.S.C. § 1983 and state law.  Plaintiff filed suit against Deputy Mabry[1] in his individual capacity, asserting a federal claim for false arrest[2] and state law claims for false imprisonment and for assault and battery.[3]  The district court denied Deputy Mabry's motion for summary judgment on these claims, concluding that Deputy Mabry was unentitled either to qualified immunity on the Fourth Amendment claim or to official immunity on the state law claims.  No reversible error has been shown; we affirm.

I.  Fourth Amendment

---

[1] Plaintiff also sued Deputy Damien Butler in his individual capacity.  The district court dismissed Plaintiff's claims against Deputy Butler, concluding that Deputy Butler was immune from suit.  Those claims are not before us in this interlocutory appeal.

[2] Plaintiff has abandoned expressly his claim for false arrest under state law.

[3] Plaintiff also asserted a federal claim against Deputy Mabry for failure to intervene, which the district court dismissed.  That claim is not before us on appeal.

We review de novo a district court's denial of a motion for summary judgment based on qualified immunity, "drawing all inferences and viewing all of the evidence in a light most favorable to the nonmoving party." Gilmore v. Hodges, 738 F.3d 266, 272 (11th Cir. 2013). Because we construe the evidence in favor of the nonmoving party, "material issues of disputed fact are not a factor in the court's analysis of qualified immunity and cannot foreclose the grant or denial of summary judgment based on qualified immunity." Bates v. Lee, 518 F.3d 1233, 1239 (11th Cir. 2008).

"Qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Vinyard v. Wilson, 311 F.3d 1340, 1346 (11th Cir. 2002). Thus, to avoid summary judgment based on qualified immunity, Plaintiff must show both that Mabry violated a federal right and that the right was already clearly established when Mabry acted. See id. "When properly applied, [qualified immunity] protects 'all but the plainly incompetent or those who knowingly violate the law.'" Ashcroft v. al-Kidd, 131 S.Ct. 2074, 2085 (2011).

3

A federal right is "clearly established" when "the contours of [the] right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." Id. at 2083 (quotations omitted). "We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." Id.

Broadly speaking, a warrantless arrest made without probable cause violates the Fourth Amendment and is actionable under section 1983. See Ortega v. Christian, 85 F.3d 1521, 1525 (11th Cir. 1996). An officer has probable cause to arrest when, "at the moment the arrest was made . . . the facts and circumstances within [the officer's] knowledge and of which [the officer] had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [accused] had committed or was committing an offense." Beck v. Ohio, 85 S.Ct. 223, 225 (1964). An officer must have more than "mere suspicion" to make an arrest; "[t]he quantum of information which constitutes probable cause . . . must be measured by the facts of the particular case." Wong Sun v. United States, 83 S.Ct. 407, 413 (1963). "[T]he requirements of reliability and particularity of the information on which an officer may act" in making a warrantless arrest are at least as stringent as those required for obtaining an arrest warrant. Id.

"To receive qualified immunity, an officer need not have actual probable cause, but only 'arguable' probable cause." Brown v. City of Huntsville, 608 F.3d 724, 734 (11th Cir. 2010). "Arguable probable cause exists where 'reasonable officers in the same circumstances and possessing the same knowledge as the Defendants could have believed that probable cause existed to arrest Plaintiff.'" Id. The reasonable-officer standard is an objective one; we do not consider the officer's subjective intent. Id. at 735. "Whether an officer possesses probable cause or arguable probable cause depends on the elements of the alleged crime and the operative fact pattern." Id.

Under Georgia law, a person commits criminal trespass when he "knowingly and without authority . . . [r]emains upon the land or premises of another person . . . after receiving notice from the owner, rightful occupant, or, upon proper identification, an authorized representative of the owner or rightful occupant to depart." O.C.G.A. § 16-7-21(b)(3).

On the date of plaintiff's arrest in 2010, some law was already clearly established. "Notice is an essential element of the offense of criminal trespass . . . ." Rayburn v. State, 300 S.E.2d 499, 500 (Ga. 1983). "Inherent in the statute's notice provision is a requirement that notice be reasonable under the circumstances, as well as sufficiently explicit to apprise the trespasser what

property he is forbidden to enter." Id.  Notice is sufficient when it is "express, location specific, and reasonable . . . ."  See Wood v. State, 490 S.E.2d 179, 180-81 (Ga. Ct. App. 1997).

The supposed facts of this case, the record viewed in the light most favorable to Plaintiff, are as follows.  When Plaintiff was released from custody after spending one night in the Fulton County Jail, he called his mother using the phone in the jail lobby to ask for a ride home.  When Plaintiff exceeded the 2-minute time limit, Deputy Mabry told him to get off the phone; and Plaintiff complied.  After waiting his turn again, Plaintiff made a second brief call to his mother.  Shortly thereafter, Deputy Mabry told Plaintiff to leave the jail lobby, but gave Plaintiff permission to stand outside the jail entrance to "wait on [his] materials."  Plaintiff complied immediately.

After Plaintiff exited the jail lobby, he stood on the sidewalk outside the entrance to the jail and in the jail parking lot.  Less than a minute later, Deputy Mabry came outside and said to Plaintiff, "I thought I told you to leave."  Deputy Mabry then told Plaintiff to "get the hell out of here."  Plaintiff began walking away from Deputy Mabry and from the jail building, across the jail's parking lot, and toward the parking lot's exit.  After Plaintiff moved beyond the bounds of the jail parking lot and onto a long access road; at a point that was at least a couple

6

hundred feet away from the jail building and beyond the bounds of the jail parking lot, but still on jail property -- he sat down on the curb.[4]

Meanwhile, Deputy Mabry called the Special Operation Response Team ("SORT") officers and directed them to arrest Plaintiff. After identifying a man matching Plaintiff's description and confirming Plaintiff's identity with Deputy Mabry, the SORT officers arrested Plaintiff close to where he had been sitting, placed him in handcuffs, and escorted him back to the jail. Plaintiff was charged ultimately with criminal trespass.

That Deputy Mabry was authorized to order Plaintiff to leave the jail premises is undisputed. Thus, the issue is whether a reasonable officer in the same circumstances could have believed that probable cause existed to arrest Plaintiff for remaining illegally on property, after receiving notice to depart, in violation of O.C.G.A. § 16-7-21(b)(3).

In the light of this record and the then-clearly-established law, no reasonable officer in the same circumstances and possessing Deputy Mabry's knowledge could have believed that probable cause existed to arrest Plaintiff for criminal trespass, when and where Plaintiff was arrested. Plaintiff complied immediately

---

[4] The record, including an aerial photograph, demonstrates that the Fulton County Jail is located on a large tract of land. A long access road separates the jail building and the adjacent parking lot from the public road; the public road is over 1000 feet in distance from the entrance to the jail building. Plaintiff had not reached the public road.

7

when Deputy Mabry told him to leave the jail lobby.  According to Plaintiff, Plaintiff also began walking immediately toward the exit from the parking lot after Deputy Mabry -- standing close outside of the jail building -- told him to "leave" and to "get the hell out of here."

Given the pre-existing law, that Plaintiff was still on jail property when he was arrested does not constitute arguable probable cause to arrest Plaintiff for criminal trespass.  By 2010, Georgia law made it obvious -- such that reasonable officers must have understood -- that Deputy Mabry's warning, given close outside the jail building, failed to notify Plaintiff explicitly (that is, very clearly) that he could not remain on the long access road leading from beyond the jail's parking lot to the public road.  The lack of the needed explicitness was not debatable, considering the words of the notice, where the notice was given, Plaintiff's location when he was arrested, and all.

In State v. Morehead, 646 S.E.2d 308 (Ga. Ct. App. 2007), a Georgia court affirmed the trial court's conclusion that an officer lacked probable cause to arrest a man (who had been arrested once before for criminal trespass in the same location) for criminal trespass because the officer failed to give sufficient notice under the statute.  There, a MARTA police officer told defendant and his friends -- who were standing under an overhang outside of a MARTA train station -- to leave

"the property." Id. at 309. When defendant and his friends returned minutes later, the officer again warned them not to return to "the property" that day. Id. A few hours later, when defendant returned to the area and entered the train station, he was arrested for criminal trespass. Id. The court concluded that the officer's warning failed to notify explicitly the defendant that he could not return to the train station to catch a train. Id. at 310. Instead, the notice could be construed as applying only to the area outside the train station. Id. As a result, "the arrest, which was based solely on the violation of an invalid criminal trespass warning, lacked probable cause." Id.

Comparing the facts in Morehead to the facts in this case, Deputy Mabry's warning, given close outside the jail building, simply to "leave" or to "get the hell out of here" was, if anything, less precise than the officer's warning in Morehead to leave "the property." And where the scope of the officer's warning to leave "the property" in Morehead did not extend explicitly to the train station immediately adjacent to the area where the warning was issued, it obviously follows that the scope of Deputy Mabry's warning to "leave" or "get the hell out of here" -- issued on the sidewalk immediately outside the jail building -- did not extend definitely and reasonably to the entirety of the jail property over 1000 feet away: to property beyond the sidewalk and beyond the bounds of the jail parking lot.

Thus, under Georgia law, Deputy Mabry's warnings clearly fell short of an explicit notice to Plaintiff that he was not permitted to remain on the long access road, running beyond the jail's parking lot to the public road. See also Murphey v. State, 41 S.E. 685 (Ga. 1902) (shopkeeper's warning -- while defendant was in shopkeeper's store -- to "leave the premises" and to never set foot in "my place" again, was not explicit notice that defendant could not use a "much-frequented" path across shopkeeper's land, located "a considerable distance" away from the store).

Drawing all inferences and viewing this record in the light most favorable to Plaintiff, it was already clearly established under Georgia law that no arguable probable cause existed to arrest Plaintiff for criminal trespass. Given the assumed facts, we accept that summary judgment based on qualified immunity is not demanded at this stage in the proceedings.

## II. State Law Claims

Deputy Mabry also argues that he is entitled to official immunity on Plaintiff's state law claims for false imprisonment and assault and battery. We review a district court's denial of summary judgment based on official immunity

10

de novo.  Hoyt v. Cooks, 672 F.3d 972, 981 (11th Cir. 2012).  "Unlike qualified immunity under federal law, we must inquire into [the officer's] subjective intent to determine whether he has official immunity under Georgia law."  Jordan v. Mosley, 487 F.3d 1350, 1357 (11th Cir. 2007).

Under Georgia law, state employees are entitled to official immunity from suit and liability unless they perform their discretionary duties "with actual malice or with actual intent to cause injury in the performance of their official functions." Ga. Const. art. I, § II, par. IX(d); Gilbert v. Richardson, 452 S.E.2d 476, 483 (Ga. 1994).  Because the parties do not dispute that Deputy Mabry was engaged in a discretionary function at all times pertinent to this appeal, we consider only whether Deputy Mabry acted with actual malice or with an intent to cause injury.

For purposes of official immunity, "actual malice" means "express malice, i.e., a deliberate intention to do wrong."  Murphy v. Bajjani, 647 S.E.2d 54, 60 (Ga. 2007).  "A 'deliberate intention to do wrong' such as to constitute the actual malice necessary to overcome official immunity must be the intent to cause the harm suffered by the plaintiffs."  Id.

Viewing the evidence in the light most favorable to Plaintiff, genuine issues of material fact exist about whether Deputy Mabry acted with actual malice or with an intent to cause Plaintiff's injuries.  Deputy Mabry's version of the events

11

surrounding Plaintiff's arrest -- including that Plaintiff created a disturbance in the jail lobby area, that Plaintiff failed to leave the jail premises after being ordered to do so several times by Deputy Mabry, and that Plaintiff appeared to be breaking into cars in the jail parking lot -- seems to be contradicted by Plaintiff's statements and by video surveillance footage of the jail lobby and parking lot.  Despite the seeming lack of evidence that Plaintiff was, in fact, breaking into cars in the jail parking lot, Deputy Mabry ordered the SORT officers to arrest Plaintiff on that basis.  On the present record, we agree that Deputy Mabry is unentitled to summary judgment based on official immunity.

      AFFIRMED.

**UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT**

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

John Ley
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

July 28, 2014

MEMORANDUM TO COUNSEL OR PARTIES

Appeal Number: 14-10232-DD
Case Style: Robert Kopperud v. Dexter Mabry
District Court Docket No: 1:12-cv-03503-WSD

**This Court requires all counsel to file documents electronically using the Electronic Case Files ("ECF") system, unless exempted for good cause.** Enclosed is a copy of the court's decision filed today in this appeal. Judgment has this day been entered pursuant to FRAP 36. The court's mandate will issue at a later date in accordance with FRAP 41(b).

The time for filing a petition for rehearing is governed by 11th Cir. R. 40-3, and the time for filing a petition for rehearing en banc is governed by 11th Cir. R. 35-2. Except as otherwise provided by FRAP 25(a) for inmate filings, a petition for rehearing or for rehearing en banc is timely only if received in the clerk's office within the time specified in the rules. Costs are governed by FRAP 39 and 11th Cir.R. 39-1. The timing, format, and content of a motion for attorney's fees and an objection thereto is governed by 11th Cir. R. 39-2 and 39-3.

Please note that a petition for rehearing en banc must include in the Certificate of Interested Persons a complete list of all persons and entities listed on all certificates previously filed by any party in the appeal. See 11th Cir. R. 26.1-1. In addition, a copy of the opinion sought to be reheard must be included in any petition for rehearing or petition for rehearing en banc. See 11th Cir. R. 35-5(k) and 40-1.

Counsel appointed under the CRIMINAL JUSTICE ACT must file a CJA voucher claiming compensation for time spent on the appeal no later than 60 days after either issuance of mandate or filing with the U.S. Supreme Court of a petition for a writ of certiorari (whichever is later).

Pursuant to Fed.R.App.P. 39, costs taxed against appellant.

The Bill of Costs form is available on the internet at www.ca11.uscourts.gov

For questions concerning the issuance of the decision of this court, please call the number referenced in the signature block below. For all other questions, please call Elora Jackson, DD at (404) 335-6173.

Sincerely,

JOHN LEY, Clerk of Court

Reply to: Jeff R. Patch
Phone #: 404-335-6161

OPIN-1A Issuance of Opinion With Costs